UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DANIEL J. WESTRICK,
Plaintiff,

Case No. 1:18-cv-561
Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

ORDER

Plaintiff Daniel J. Westrick brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying his applications for Child's Disability Insurance Benefits ("DIB") and supplemental security income ("SSI"). This matter is before the Court on plaintiff's statement of errors (Doc. 10), the Commissioner's response in opposition (Doc. 15), and plaintiff's reply memorandum. (Doc. 16).

## I. Procedural Background

Plaintiff protectively filed his applications for CIB and SSI on June 1, 2012, alleging disability since February 2, 2011, due to fetal alcohol syndrome, oppositional defiant disorder ("ODD"), Attention Deficit Hyperactivity Disorder ("ADHD"), mood disorder, and learning disorder. The applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge ("ALJ") David Redmond. Following a decision concluding that plaintiff was not under a "disability" within the meaning of the Social Security Act, the Appeals Council denied plaintiff's request for review. Plaintiff then filed an action in United States District Court under *Westrick v.*

*Commissioner of Social Security*, 3:16-cv-30. This Court remanded plaintiff's claim for a new hearing and decision.

The Appeals Council subsequently vacated and remanded ALJ Redmond's decision. Plaintiff and a vocational expert ("VE") appeared and testified at the subsequent hearing, held by ALJ Mark Hockensmith on February 15, 2017. On March 24, 2017, ALJ Hockensmith issued a decision denying plaintiff's applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of ALJ Hockensmith the final decision of the Commissioner.

**II. Analysis**

**A. Legal Framework for Disability Determinations**

Child's benefits based on disability are provided for under 42 U.S.C. § 402(d). A claimant may be entitled to DIB if he is at least 18 years old and has a disability that began before he turned 22 years old. 20 C.F.R. § 404.350(a)(5). *See also Miller v. Shalala*, 859 F. Supp. 297, 298 (S.D. Ohio 1994) (quoting 42 U.S.C. § 402(d)(1)(B)(ii)) (a requirement for DIB is that the claimant be "under a disability . . . which began before he attained the age of 22. . . ."). To qualify for DIB, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

To establish eligibility for retroactive child's DIB, the claimant must show that he "has been 'able to work at the substantial gainful activity level'" as defined under 20 C.F.R. § 404.1572. *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018). The claimant must make a showing of "continuous disability" by establishing: (1) that he "was disabled on or

2

before [his] birthday (here, the twenty-second birthday); and (2) that such disability continue[d] to the date of the application." *Miller*, 859 F. Supp. at 300 (citing *Futernick v. Richardson*, 484 F.2d 647 (6th Cir. 1973)). *See also Baker v. Barnhart*, 101 F. App'x 992, 993 (6th Cir. 2004) ("To satisfy the requirements of child insurance benefits, [the claimant] must establish . . . that she was disabled as a child or that she is disabled as an adult and that she was continuously disabled from the date of her twenty-second birthday . . . through the date that she applied for benefits.") (citing 42 U.S.C. § 402(d)(1); *Futernick*, 484 F.2d at 648).

To qualify for SSI disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. Born [in] . . . 1993, the [plaintiff] had not attained age 22 as of February 2, 2011, the alleged onset date (20 CFR 404.102, 416.120(c)(4) and 404.350(a)(5)).

2. The [plaintiff] has not engaged in substantial gainful activity since February 2, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: attention deficit hyperactivity disorder (ADHD), oppositional defiant disorder, and mood disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, [the ALJ] find[s] that the [plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: (1) simple, routine, repetitive tasks; (2) in a static work environment with few changes in

4

routine; (3) no fast-paced work or strict production quotas; (4) no direct dealing with the public; and (5) occasional contact with coworkers and supervisors.

6. The [plaintiff] has no past relevant work (20 CFR 404.1565 and 416.965).

7. The [plaintiff] was born [in] . . . 1993 and was 17 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and can communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the [plaintiff] does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[1]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from February 2, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 979-92).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

---

[1] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative medium, unskilled jobs, such as warehouse worker (200,000 jobs in the national economy); industrial cleaner (300,000 jobs in the national economy); and floor waxer (100,000 jobs in the national economy). (Tr. 992, 1023).

5

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Medical Evidence and Medical Opinions of Record

Plaintiff was assessed at TCN Behavioral Health (TCN) in December 2010, where he was diagnosed with ADHD and disruptive behavior disorder. (Tr. 304-16). Prior to his treatment at TCN, plaintiff saw psychiatrist Dr. Carmel Flores, M.D., at Integrated Youth Services. In a letter dated April 25, 2012, Dr. Flores stated that she had treated plaintiff since February 2, 2011. Dr. Flores reported that plaintiff initially presented to her with difficulty focusing, forgetfulness, distractibility, hyperactivity, argumentativeness, defiance, and anger outbursts. (Tr. 267). Dr.

6

Flores diagnosed ADHD, combined type ODD; Mood Disorder, NOS; and rule out a learning Disorder, NOS. (*Id.*).

In October 2012, plaintiff's treating psychiatrist, Dr. Esam Alkhawaga, M.D., completed a Mental Functional Capacity Assessment in which he opined that plaintiff had moderate limitations in numerous areas of functioning, including the areas of understanding and memory, sustained concentration and persistence, social interaction, and adaptation due to a mood disorder NOS and ADHD. Dr. Alkhawaga opined that plaintiff's mental limitations were likely to last 12 months or more and that plaintiff was unemployable. Dr. Alkhawaga also found that plaintiff was unemployable for a period of 12 months or more. (Tr. 805-06).

Dr. Alkhawaga and plaintiff's treating case manager, Gale LaPointe, completed a joint Mental Impairment Questionnaire in November 2013. (Tr. 946-49). Dr. Alkhawaga listed plaintiff's diagnoses as a mood disorder, NOS; ADHD; ODD; borderline intellectual functioning; fetal alcohol effects; and alcohol and cannabis abuse. (Tr. 946). Dr. Alkhawaga and Ms. LaPointe listed plaintiff's signs and symptoms as: poor memory; sleep disturbance; personality change; delusions or hallucinations; substance dependence; difficulty thinking or concentrating; and oddities of thought, perception, speech, and behavior. (*Id.*). Clinical findings included lack of attention with distractibility, decreased concentration, and inverted sleep rhythm. (Tr. 947). Dr. Alkhawaga and Ms. LaPointe reported that plaintiff showed no significant response to multiple trials of medications. (*Id.*). They noted that plaintiff's prognosis was poor without treatment and medications and fair with treatment and medications. (*Id.*). Dr. Alkhawaga and Ms. LaPointe opined that plaintiff would be absent from work as a result of his impairments or treatment more than three times per month and he would be

distracted by psychological symptoms for one-half of an average eight-hour workday. (Tr. 948). They noted that plaintiff had moderate limitations in the functional areas of maintaining social functioning and maintaining concentration, persistence, or pace, but only slight restrictions of activities of daily living. (*Id.*). Dr. Alkhawaga and Ms. LaPointe explained that plaintiff had difficulty completing tasks, following directions, and sitting still at times. (Tr. 949). Dr. Alkhawaga also noted that based on his records, plaintiff's symptoms existed prior to 2010. (*Id.*).

In April 2014, Dr. Alkhawaga listed plaintiff's diagnoses as Mood Disorder, NOS; ADHD combined type; Alcohol Abuse; Borderline Intellectual Functioning; and Fetal Alcohol Syndrome. (Tr. 950). Dr. Alkhawaga identified plaintiff's symptoms as poor memory; mood disturbances; emotional lability; substance dependence; social withdrawal or isolation; blunt, flat, or inappropriate affect; hostility and irritability; inattention; and decreased concentration. (Tr. 951). Clinical findings included mood instability, inattention, decreased concentration, and impulsivity. (*Id.*). He opined that plaintiff would miss work more than three times a month due to his impairments. (Tr. 952). He opined that plaintiff now had only slight restrictions in activities of daily living and slight difficulties in maintaining social functioning. Dr. Alkhawaga opined that plaintiff continued to have moderate deficiencies of concentration, persistence, or pace and moderate episodes of deterioration. (Tr. 953).

State agency reviewing psychologist Dr. Kristen Haskins, Psy.D., reviewed plaintiff's file on August 7, 2012 and determined that plaintiff retained the capacity to engage in work-related activities involving simple and repetitive tasks with one or two-step instructions; was capable of

completing tasks in a setting that was not fast-paced and does not have a requirement for close sustained focus/attention; should have occasional, superficial contact with coworkers, supervisors, or the general public and could complete tasks in a setting that did not require collaborative efforts with others for task completion; and was capable of low stress work where tasks were static and changes were fully explained. (Tr. 54-56). Dr. Karen Terry, Ph.D., reviewed plaintiff's file for reconsideration purposes in November 2012 and affirmed the assessment of Dr. Haskins. (Tr. 75-79). Dr. Terry added that plaintiff should not be required to have constant, direct over-the-shoulder supervision. (Tr. 77).

### E. Specific Error

On appeal, plaintiff alleges a single assignment of error: that the ALJ erred in weighing the opinion of his treating psychiatrist, Dr. Alkhawaga, as well as the opinions of the state agency psychologists, Drs. Haskins and Terry. (Doc. 10). Specifically, plaintiff argues that the ALJ erred by giving greater weight to the opinions of the state agency reviewing psychologists who rendered their opinions without reviewing the whole record. (*Id.* at 11-12). Plaintiff argues that the ALJ erred in rejecting the treating source opinion as inconsistent with the "most recent treatment records." (*Id.* at 12). Plaintiff argues that any alleged "improvement" must be considered within the context of the record as a whole. (*Id.* at 13). Plaintiff contends that the ALJ's consideration of plaintiff's self-reports that he did not need treatment and he looked for work ignores the overall record documenting that he had severely impaired judgment and insight. (*Id.* at 14-15).

In response, the Commissioner argues that the ALJ reasonably gave the opinions of Dr. Alkhawaga little weight and properly considered the treating source opinions consistent with the

regulations. (Doc. 15 at 5). The Commissioner argues that the ALJ properly pointed out that Dr. Alkhawaga and Ms. LaPointe's opinion that plaintiff would miss work more than three days per month due to his impairments and that he would be distracted over half the time was inconsistent with their findings that plaintiff had slight to moderate limitations in mental functioning. (*Id.*). The Commissioner argues that the ALJ extensively examined the medical record throughout the entirety of his decision and did not solely consider plaintiff's most recent treatment records when evaluating plaintiff's abilities and the medical opinions. (*Id.* at 6-7). The Commissioner contends that the ALJ properly gave more weight to the state agency reviewing psychologists, who rendered their opinions without access to the entire record, because the ALJ also considered evidence that post-dated their opinions and therefore concluded that plaintiff was not as limited as these psychologists opined. (*Id.* at 7-8).

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to

give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), 416.927(c)(i)-(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (citation omitted). *See also Wilson*, 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight afforded to the treating physician opinion). Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937. This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Gayheart*, 710 F.3d at 376 (quoting *Wilson*, 378 F.3d at 544).

In his decision, the ALJ assigned the opinions of Dr. Alkhawaga little weight and found that they were inconsistent with the objective evidence. Specifically, the ALJ noted that:

> Despite findings that the claimant would miss more than three days of work a month and would be distracted from work more than half the time because

11

of psychologically based symptoms, neither Dr. Alkhawaga nor Ms. LaPointe found more than moderate limitation in mental functioning in the multiple assessments they completed. In fact, he was found to have only slight limitations in activities of daily living and maintaining social functioning. Only slight to moderate limitations would not equate to missing three days of work a month and being off task at least half the time. Additionally, the claimant's most recent treatment records show that he had stable and generally unremarkable mental status examinations. The claimant himself reported that he did not believe he needed treatment and looked for work throughout much of the record.

(Tr. 991).

The ALJ assigned the opinions of state agency reviewing psychologists Drs. Haskins and Terry "some weight" to the extent they were consistent with treatment records, testimony at the hearing, and the RFC finding. (Tr. 990). The ALJ determined that more weight could not be given to their opinions because plaintiff was not limited to only superficial interactions with others, as he reported skateboarding with friends and recently got married and helped his wife raise her children. (*Id.*). The ALJ also determined that it was unnecessary to limit plaintiff to work that required no close or sustained focus/attention because he was "able to focus on video games, skateboarding, and plotting his thefts." (*Id.*).

The Court concludes that the ALJ's weighing of the treating source and state agency reviewing psychologists' opinions is substantially supported by the record. (Tr. 990). The ALJ reasonably concluded that the opinions of Dr. Alkhawaga and Ms. LaPointe were inconsistent with the objective evidence and therefore not entitled to controlling weight. (Tr. 991). The ALJ noted that Dr. Alkhawaga and Ms. LaPointe's October 2013 opinion that plaintiff would be absent from work more than three times per month and would be distracted half of the time in an average eight-hour workday was inconsistent with their opinions that plaintiff had slight and moderate functional limitations. (Tr. 991). In addition, in October 2012 and again in April

2014, Dr. Alkhawaga opined that plaintiff had slight or moderate functional limitations. (Tr. 805-06, Tr. 950-53). *Harlow v. Astrue*, No. 3:10-cv-242, 2011 WL 2652357, at *4 (S.D. Ohio July 6, 2011) (Black, J.) (upholding ALJ's decision to discount treating physician's opinion that the plaintiff was disabled because the physician rated plaintiff's impairment as either moderate to moderately severe in basically every category).

The ALJ also reasonably discounted Dr. Alkhawaga's opinion on the basis that it was inconsistent with the most recent treatment records. Plaintiff argues that the ALJ failed to consider the relevant longitudinal record. However, a review of the ALJ's entire decision shows that the ALJ did consider the longitudinal record. The ALJ conducted a thorough review of the record in determining plaintiff's RFC and considered medical records from approximately five years of plaintiff's mental health treatment history. (Tr. 983). The ALJ noted that while plaintiff's actions and criminal behaviors were impulsive to some degree, plaintiff admitted during a treatment session in 2011 that he often acted with intent and plotted each step of his thefts. (Tr. 984) (citing Tr. 348). Plaintiff also admitted that he used poor judgment in particular situations. (*Id.*) (citing Tr. 334). Plaintiff reported that his overall behavior and mood were improved when he consistently took his medication. (Tr. 985) (citing Tr. 301). In 2012, the ALJ noted that plaintiff had several normal mental status examinations, although he continued to exercise poor judgment and got into legal trouble for shoplifting and a probation violation. (Tr. 985-86) (citing Exhs. 3F and 4F, Tr. 400-04). He continued adult services at TCN for community support and pharmacological management. (Tr. 986) (citing Tr. 410-13). In October 2012, he reported that he was staying out of trouble, looking for a job, and feeling better on medications with a better mood, temper, and attitude. (*Id.*) (citing Tr. 578-81).

While in jail for a probation violation in early 2013, plaintiff's condition continued to be monitored, and he showed normal behavior, speech, thought processes, and thought content. (Tr. 986-87) (citing Tr. 748-49). Plaintiff violated his probation again in May 2013 and was sent to jail where his mental status examinations were unremarkable, except for limited insight/judgment. (*Id.*) (citing Tr. 686-88). Plaintiff reported reemergence of his symptoms of mood swings, bursts of anger, and decreased attention and concentration in August 2013 after he had been out of medications since his release from jail. (*Id.*) (citing Tr. 683-85). However, after another medication adjustment in December 2013, plaintiff reported improvement in attention and concentration. (*Id.*) (citing Tr. 867-69). In 2014 and 2015, the ALJ noted that treatment records frequently showed plaintiff to be focused and failed to show him displaying symptoms during appointments. (Tr. 989). The ALJ explicitly recognized that plaintiff's symptoms were "at their worst in the early record." (*Id.*). Thus, the ALJ did not ignore the longitudinal medical record as plaintiff suggests.

Plaintiff argues that based on less-recent records the ALJ "should have at least considered a closed period of disability for the several years between his alleged disability onset date and the 'most recent' treatment records." (Doc. 10 at 13; Doc. 16 at 2). In support, plaintiff refers the Court to several treatment records generally outlined in his statement of facts, which he alleges support a finding that he had substantially disabling symptoms years prior to ALJ Hockensmith's decision. (Doc. 10 at 13). However, plaintiff fails to connect these isolated treatment records with any evidence of specific limitations that would preclude plaintiff from a full range of work with certain nonexertional limitations. In addition, even if these records could support a finding of disability, the ALJ's decision assigning "little weight" to the opinions of Dr. Alkhawaga must

be upheld. *See Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").

While the ALJ's decision does not reflect an extensive analysis of the regulatory factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6), the regulations require only that an ALJ decision include "'good reasons . . . for the weight give[n] [to the] treating source's opinion'—not an exhaustive factor-by-factor analysis." *Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 804 (6th Cir. 2011) (citing *Wilson*, 378 F.3d at 547). *See also Guinn v. Comm'r of Soc. Sec.*, 555 F. Supp. 2d 913, 920 (S.D. Ohio 2008) (ALJ's failure to mention regulatory factors may qualify as harmless error if the ALJ provided "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and [was] sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.") (quoting *Wilson*, 378 F.3d at 544). Here, the ALJ's decision reflects consideration of the regulatory factors, albeit not explicitly. The ALJ noted that Dr. Alkhawaga was plaintiff's treating psychiatrist and recognized that he was bound by the treating physician rule and applicable regulations. (Tr. 990). The ALJ considered the consistency and supportability of Dr. Alkhawaga's opinions with the record as a whole, including his own opinions on plaintiff's moderate limitations, as well as recent treatment records and plaintiff's reports that he did not need treatment and actively looked for work. (Tr. 991).

The Court also concludes that the ALJ properly weighed the opinions of the state agency reviewing psychologists, Drs. Haskins and Terry. A non-treating source's opinion is weighed

15

based on the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(3)-(6); *Wilson*, 378 F.3d at 544. Under the Social Security regulations, the opinions of state agency medical consultants may be entitled to significant weight where they are supported by record evidence. *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 713 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(e)(2)(i)).

Plaintiff primarily argues that these psychologists did not have access to the full record when they rendered their opinions in 2012. (Doc. 10 at 11-12). However, the ALJ can reasonably credit the opinion of reviewing medical sources, despite the fact that they did not have access to the entire record, because their conclusion that the claimant retained the capacity to work was supported by the totality of the medical and vocational evidence in the record. *See McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (concluding that an ALJ may rely on a state agency physician's opinion that is not based on all of the medical evidence in the record if the ALJ takes into account any evidence that the physician did not consider). In affording the opinions of Drs. Haskins and Terry "some weight," the ALJ recognized that both psychologists rendered their opinions in 2012 and considered medical records post-dating their opinions in rendering the RFC. As the ultimate responsibility for assessing the RFC lies with the ALJ, plaintiff has not shown how the ALJ erred in weighing the opinions of the state agency reviewing psychologists, especially when he fully considered medical records post-dating their opinions.

Accordingly, plaintiff's single assignment of error is overruled.

**IT IS THEREFORE ORDERED THAT** the decision of the Commissioner is **AFFIRMED** and this case is closed on the docket of the Court.

Date: 9/26/19

Karen L. Litkovitz
United States Magistrate Judge